| COMMERCIAL PROMISSORY NOTE | | Machias Savings Bank<br>4 Center Street<br>P.O. Box 318<br>Machias, Maine 04654-0318<br>(866)416-9302<br>www.machiassavings.com | | EXHIBIT<br>1 |
|---|---|---|---|---|

| LOAN NUMBER | NOTE DATE | PRINCIPAL AMOUNT | LOAN TERM | MATURITY DATE |
|---|---|---|---|---|
| 2160003410 | April 28, 2022 | $420,000.00 | 240 Months | April 28, 2042 |
| **LOAN PURPOSE:** TO PURCHASE LAND AT 29 RIVER ROAD & 33 RIVER ROAD, LINCOLN, ME | | | | |

**BORROWER INFORMATION**
RICHARD J. LARKIN
PO BOX 405
LINCOLN, ME 04457-0405

**NOTE.** This Commercial Promissory Note will be referred to in this document as the "Note."

**LENDER.** "Lender" means Machias Savings Bank whose address is 4 Center Street, P.O. Box 318, Machias, Maine 04654-0318, its successors and assigns.

**BORROWER.** "Borrower" means each person or legal entity identified above in the BORROWER INFORMATION section who signs this Note.

**PROMISE TO PAY.** For value received, receipt of which is hereby acknowledged, on or before April 28, 2042 (the "Maturity Date"), the Borrower promises to pay the principal amount of Four Hundred Twenty Thousand and 00/100 Dollars ($420,000.00) and all interest on the outstanding principal balance and any other charges, including service charges, to the order of Lender at its office at the address noted above or at such other place as Lender may designate in writing. The Borrower will make all payments in lawful money of the United States of America.

**PAYMENT SCHEDULE.** This Note will be paid according to the following schedule: 240 consecutive payments of principal and interest beginning on May 28, 2022 and continuing on the same day of each month thereafter. The amount of the monthly payments shall be determined on the basis of a 240 month amortization period beginning on the date of this Note. The initial payment will be in the amount of $2,777.14. The unpaid principal balance of this Note, together with all accrued interest and charges owing in connection therewith, shall be due and payable on the Maturity Date.

**APPLICATION OF PAYMENTS.** All payments received by the Lender from the Borrower for application to this may be applied to the Borrower's obligations under this in such order as determined by the Lender. Payments will be applied first to any accrued unpaid interest; then to principal; then to any late charges; and then to any unpaid collection costs.

**INTEREST.**

Interest Rate and Scheduled Payment Changes. Interest will begin to accrue on April 28, 2022. The initial variable interest rate on this Note will be 4.950 % per annum. This interest rate may change every five (5) years. Each date on which the interest rate may change is called the "Change Date." Beginning with the first Change Date, Lender will calculate the new interest rate based on WSJ Prime in effect on the Change Date (the "Index") plus 1.450 percentage points (the "Margin"). The interest rate will never be less than 4.700%. Following the first five (5) years of this Note and every five (5) years thereafter, so long as the promissory note remains a fixed rate note, Borrower and Lender shall attempt to agree upon a fixed rate of interest for an additional five (5) year period (a "Fixed Rate Period"). In the event a new Fixed Rate Period is established, the loan Prepayment Premium, if described in Prepayment Premium Section of this Note, shall be renewed and in effect during such Fixed Rate Period (in year 6 the "first year of the new fixed rate period" the prepayment premium would be 5%). In the event agreement is reached, the Lender shall adjust the monthly payment of principal and interest by re-amortizing the principal balance at the new rate of interest over the remaining term of the loan. In the event the parties are unable to agree upon a fixed rate of interest for an additional five (5) year term, this Note will convert to an adjustable rate promissory note adjusting on a daily basis as hereinafter provided. If the Note converts to an adjustable rate, the Lender shall review the interest rate daily. Any change in rate shall be effective on the date the interest rate changes. The adjusted rate will be One (1.00%) percent above (greater than) (unless increased or decreased as hereinafter set forth) the Wall Street Journal Prime in effect. When this Note converts to a variable rate and at six (6) month intervals thereafter, the Lender shall adjust the monthly payment amount by re-amortizing the principal balance over the remaining term of the loan. The new payment amount will be due for the next payment following the re-amortization; all such adjustments are subject, however, to the terms set forth below. Interest rate increases are optional with the Noteholder; interest rate decreases are mandatory. Any increase or decrease shall be adjusted to the nearest one eighth (1/8th) of one (1%) percent of the specified index rate.

Index Replacement. If the Index is Unavailable on the Change Date, the interest rate will be calculated using a "Replacement Index" and a new commercially reasonable "Replacement Margin."

*Index Unavailability.* The Index is considered "Unavailable" when one or more of the following events occurs:

(1) A public statement by or on behalf of the administrator of the Index, or supervisor thereof or a relevant governmental authority, that (a) the administrator will cease publishing the Index and there is no successor administrator that will continue publication of the Index, or (b) that the Index has been discontinued, is no longer reliable or representative, or may no longer be used;

(2) The Index is not published by the administrator of the Index for five consecutive business days without advance announcement that the disruption is temporary; or

(3) Lender reasonably determines that the Index no longer reflects the Lender's cost of funding.

*Replacement Index and Replacement Margin.* Lender will select the Replacement Index and determine an associated Replacement Margin. Lender shall make a reasonable effort to select a Replacement Index and a Replacement Margin that, when added together, Lender reasonably expects will minimize any change to the cost of the loan. The Replacement Index shall be (a) a replacement Index selected or recommended by a relevant governmental authority or a committee endorsed or convened thereby, (b) a comparable successor or alternative Index and Margin that is, at such time, broadly viewed as acceptable market practice for similar loans in lieu of the Index, or (c) a successor or alternative Index rate as Lender may reasonably determine. The Replacement Margin shall be determined by utilizing a margin adjustment method which is, at such time, (a) selected or recommended by a relevant governmental authority or a committee endorsed or convened thereby, (b) broadly viewed as acceptable market practice, or (c) any other method as the Lender may reasonably determine.

**Compliance with Law.** Nothing contained herein shall be construed as to require the Borrower to pay interest at a greater rate than the maximum allowed by law. If, however, from any circumstances, Borrower pays interest at a greater rate than the maximum allowed by law, the obligation to be fulfilled will be reduced to an amount computed at the highest rate of interest permissible under applicable law and if, for any reason whatsoever, Lender ever receives interest in an amount which would be deemed unlawful under applicable law, such interest shall be automatically applied to amounts owed, in Lender's sole discretion, or as otherwise allowed by applicable law. An increase in the interest rate will result in a higher payment amount.

**Accrual Method.** Interest on this Note is calculated on an **Actual/360** day basis. This calculation method results in a higher effective interest rate than the numeric interest rate stated in this Note.

**Default Rate.** The unpaid balance of this loan shall, while any Event of Default exists under this Note or any other agreement related to the loan, be subject to a default rate of interest equal to 4% over existing rate at the time of default.

**LATE PAYMENT CHARGE.** If any required payment is more than 10 days late, then at Lender's option, Lender will assess a late payment charge of 10.0% of the amount of the regularly scheduled payment then past due.

**PREPAYMENT PENALTY.** This Note is subject to a prepayment penalty. Payment of all unpaid principal, accrued and unpaid interest and all other fees then outstanding at any time during the life of the loan will result in a penalty that shall be equal to: Within the first five (5) years, or within any future Fixed Rate Period, as defined in the Interest Rate Section of this Note, a prepayment premium will apply to the amount being prepaid. The prepayment premium will be 5% of the prepaid amount in the first year of any Fixed Rate Period, 4% of the prepaid amount in the second year of any Fixed Rate Period, 3% of the prepaid amount in the third year of any Fixed Rate Period, 2% of the prepaid amount in the fourth year of any Fixed Rate Period, and 1% of the prepaid amount in the fifth year of any Fixed Rate Period. This prepayment premium shall only apply in the event this Note is refinanced with another financial institution..

**SECURITY TO NOTE.** Security for this Note is granted pursuant to the following security document(s):

- Commercial Real Estate Security Instrument dated April 28, 2022.

**RIGHT OF SET-OFF.** To the extent permitted by law, Borrower agrees that Lender has the right to set-off any amount due and payable under this Note, whether matured or unmatured, against any amount owing by Lender to Borrower including any or all of Borrower's accounts with Lender. This shall include all accounts Borrower holds jointly with someone else and all accounts Borrower may open in the future. Such right of set-off may be exercised by Lender against Borrower or against any assignee for the benefit of creditors, receiver, or execution, judgment or attachment creditor of Borrower, or against anyone else claiming through or against Borrower or such assignee for the benefit of creditors, receiver, or execution, judgment or attachment creditor, notwithstanding the fact that such right of set-off has not been exercised by Lender prior to the making, filing or issuance or service upon Lender of, or of notice of, assignment for the benefit of creditors, appointment or application for the appointment of a receiver, or issuance of execution, subpoena or order or warrant. Lender will not be liable for the dishonor of any check when the dishonor occurs because Lender set-off a debt against Borrower's account. Borrower agrees to hold Lender harmless from any claim arising as a result of Lender exercising Lender's right to set-off.

**RELATED DOCUMENTS.** The words "Related Documents" mean all promissory notes, security agreements, mortgages, deeds of trust, deeds to secure debt, business loan agreements, construction loan agreements, resolutions, guaranties, environmental agreements, subordination agreements, assignments, and any other documents or agreements executed in connection with the indebtedness evidenced hereby this Note whether now or hereafter existing, including any modifications, extensions, substitutions or renewals of any of the foregoing. The Related Documents are hereby made a part of this Note by reference thereto, with the same force and effect as if fully set forth herein.

**DEFAULT.** Upon the occurrence of any one of the following events (each, an "Event of Default" or "default" or "event of default"), Lender's obligations, if any, to make any advances will, at Lender's option, immediately terminate and Lender, at its option, may declare all indebtedness of Borrower to Lender under this Note immediately due and payable without further notice of any kind notwithstanding anything to the contrary in this Note or any other agreement: (a) Borrower's failure to make any payment on time or in the amount due; (b) any default by Borrower under the terms of this Note or any other Related Documents; (c) any default by Borrower under the terms of any other agreement between Lender and Borrower; (d) the death, dissolution, or termination of existence of Borrower or any guarantor; (e) Borrower is not paying Borrower's debts as such debts become due; (f) the commencement of any proceeding under bankruptcy or insolvency laws by or against Borrower or any guarantor or the appointment of a receiver; (g) any default under the terms of any other indebtedness of Borrower to any other creditor; (h) any writ of attachment, garnishment, execution, tax lien or similar instrument is issued against any collateral securing the loan, if any, or any of Borrower's property or any judgment is entered against Borrower or any guarantor; (i) any part of Borrower's business is sold to or merged with any other business, individual, or entity; (j) any representation or warranty made by Borrower to Lender in any of the Related

Documents or any financial statement delivered to Lender proves to have been false in any material respect as of the time when made or given; (k) if any guarantor, or any other party to any Related Documents terminates, attempts to terminate or defaults under any such Related Documents; (l) Lender has deemed itself insecure or there has been a material adverse change of condition of the financial prospects of Borrower or any collateral securing the obligations owing to Lender by Borrower. Upon the occurrence of an event of default, Lender may pursue any remedy available under any Related Document, at law or in equity.

**GENERAL WAIVERS.** To the extent permitted by law, the Borrower severally waives any required notice of presentment, demand, acceleration, intent to accelerate, protest, and any other notice and defense due to extensions of time or other indulgence by Lender or to any substitution or release of collateral. No failure or delay on the part of Lender, and no course of dealing between Borrower and Lender, shall operate as a waiver of such power or right, nor shall any single or partial exercise of any power or right preclude other or further exercise thereof or the exercise of any other power or right.

**JOINT AND SEVERAL LIABILITY.** The liability of all parties obligated in any manner under this Note shall be joint and several, to the extent of their respective obligations.

**SEVERABILITY.** If a court of competent jurisdiction determines any term or provision of this Note is invalid or prohibited by applicable law, that term or provision will be ineffective to the extent required. Any term or provision that has been determined to be invalid or prohibited will be severed from the rest of this Note without invalidating the remainder of either the affected provision or this Note.

**SURVIVAL.** The rights and privileges of the Lender hereunder shall inure to the benefits of its successors and assigns, and this Note shall be binding on all heirs, executors, administrators, assigns, and successors of Borrower.

**ASSIGNABILITY.** Lender may assign, pledge or otherwise transfer this Note or any of its rights and powers under this Note without notice, with all or any of the obligations owing to Lender by Borrower, and in such event the assignee shall have the same rights as if originally named herein in place of Lender. Borrower may not assign this Note or any benefit accruing to it hereunder without the express written consent of the Lender.

**ORAL AGREEMENTS DISCLAIMER.** This Note represents the final agreement between the parties and may not be contradicted by evidence of prior, contemporaneous, or subsequent oral agreements of the parties. There are no unwritten oral agreements between the parties.

**GOVERNING LAW.** This Note is governed by the laws of the state of Maine except to the extent that federal law controls.

**HEADING AND GENDER.** The headings preceding text in this Note are for general convenience in identifying subject matter, but have no limiting impact on the text which follows any particular heading. All words used in this Note shall be construed to be of such gender or number as the circumstances require.

**ATTORNEY'S FEES, COSTS, AND EXPENSES.** Borrower agrees to pay all of Lender's costs, fees, and expenses arising out of or related to the enforcement of this Note or the relationship between the parties. Included in the fees that Lender may recover from Borrower are the reasonable attorney's fees that Lender incurs, including all fees incurred in the course of representing Lender before, during, or after any lawsuit, arbitration, or other proceeding and those incurred in appeals, whether the issues arise out of contract, tort, bankruptcy, or any other area of law. Included in the costs and expenses which Lender may recover are all court, alternative dispute resolution or other collection costs, and all expenses incidental to perfecting Lender's security interests and liens, preserving the collateral (including payment of taxes and insurance), records searches, and expenses related to audits, inspection, and copying. All costs and expenses Lender is entitled to recover shall accrue interest at the highest rate set forth hereunder or in any of the Related Documents.

**COMMERCIAL PURPOSES.** Borrower intends to use the loan proceeds solely for business or commercial related purposes.

**FINANCIAL STATEMENTS.** Upon request by the Lender, Borrower will furnish Lender with, as soon as available, but in no event later than one hundred twenty (120) days after the end of each fiscal year, Borrower's balance sheet and income statement for the year ended, prepared by borrower. All financial reports required to be provided under this Note shall be prepared in accordance with accounting principles acceptable to Lender, applied on a consistent basis, and certified by Borrower as being true and correct.

**MINIMUM INTEREST CHARGE.** In any event, even upon full repayment of this Note, Borrower understands that Lender is entitled to a minimum interest charge of $25.00.

**TRANSFERABLE RECORD.** Borrower agrees that this Note is intended to be and shall be treated as an effective, enforceable, and valid transferable record.

**WAIVER OF JURY TRIAL.** All parties to this Note hereby knowingly and voluntarily waive, to the fullest extent permitted by law, any right to trial by jury of any dispute, whether in contract, tort, or otherwise, arising out of, in connection with, related to, or incidental to the relationship established between them in this Note or any other instrument, document or agreement executed or delivered in connection with this Note or the Related Documents.

By signing this Note, Borrower acknowledges reading, understanding, and agreeing to all its provisions and receipt hereof.

_/s/ Richard Larkin_     28 APR 22
RICHARD J. LARKIN          Date
Individually

**LENDER:** Machias Savings Bank

_/s/ Dean T. Clark_     4/28/22
By: DEAN T. CLARK          Date
Its: SENIOR VICE PRESIDENT